UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

Case No. 9:20-cv-80124-DMM

LES BIJOUX GROUP, LLC, a Florida
Limited Liability Company; LES
BIJOUX NAPLES, LLC, a Florida
Limited Liability Company; and LES
BIJOUX ASPEN, LLC, a Colorado
Limited Liability Company; LES BIJOUX,
LLC, a Florida Limited Liability Company;
and LES BIJOUX, INC., a Florida
Corporation,

       Plaintiffs,

v.

VAN CLEEF & ARPELS, INC., a Delaware
Company; VC&A DISTRIBUTION, INC.,
a Delaware Company; RICHEMONT NORTH
AMERICA, INC., a Delaware Company; A.
LANGE & SOHNE, INC., a Delaware
Company; JAEGER-LECOULTRE, INC.,
a Delaware Company, OFFICINE PANERAI,
INC., a Delaware Company; PIAGET, INC.,
a Delaware Company; VACHERON
CONSTANTIN, INC., a Delaware
Company; ROGER DUBUIS, INC., a
Delaware Company; ROGER DUBOIS,
NORTH AMERICA, INC., a Delaware
Company.

       Defendants.

_____

**DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
TO DISMISS, AND MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

      A.     Plaintiffs Sell Defendants' Products at Several Retail Stores.............................. 2

      B.     The Relationships Between Plaintiffs and Defendants are Governed by
           Written Agreements. ...................................................................................... 3

      C.     The Agreements Contain Mandatory Arbitration and Choice of Law
           Provisions...................................................................................................... 4

      D.     Notwithstanding the Mandatory Arbitration Agreements, Plaintiffs
           Brought This Action In Court. ....................................................................... 5

III.    ARGUMENT ............................................................................................................. 5

      A.     Plaintiffs Should Be Compelled to Arbitrate Their Claims. ............................... 5

          1.     The FAA Controls This Dispute And Require Rigorous
               Enforcement of Arbitration Agreements. ................................................. 5

          2.     The Express Terms of the Agreements Compel Arbitration of
               Plaintiffs' Claims. .................................................................................. 7

               a.     Plaintiffs Are Bound By The Express Terms of the
                     Agreements. ................................................................................ 7

               b.     Although It Is For The Arbitrator to Decide, There Can Be
                     No Dispute That Plaintiffs' Claims Fall Within The Scope
                     of the Arbitration Clauses. .......................................................... 8

          3.     To The Extent The Court Finds That Any Parties Are Not
                Signatories, The Doctrine of Equitable Estoppel Requires
                Arbitration. .......................................................................................... 10

          4.     Plaintiffs' Case Should be Stayed Pending Resolution of
                Arbitration in Switzerland and New York. ............................................. 13

      B.     In the Alternative, All Claims Must Be Dismissed Under Rule 12(b)(6)............ 13

          1.     Plaintiffs Fail To Plead Their Claims With Particularity And
                Engage in Improper Group Pleading. ..................................................... 14

          2.     Plaintiffs' FFA Claims Fail As A Matter of Law. .................................. 15

                a.     The Choice of Law Provisions in the Agreements Doom
                       Plaintiffs' FFA Claim. ............................................................... 15

                b.     The Express Disclaimers in the Agreements Foreclose
                       Plaintiffs From Alleging Detrimental Reliance Under The
                       FFA. ........................................................................................... 15

          3.     Plaintiffs' Breach of Implied Covenant of Good Faith And Fair
                Dealing Claims Fail Under Applicable Law............................................ 17

i

**TABLE OF CONTENTS**
(continued)

Page

        a.    Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claims Fail Under New York Law. .............................. 18

        b.    Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claims Fail Under Swiss Law. ....................................... 20

IV.    CONCLUSION ............................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) .............................................................13

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ...............................................................................6

*ARI & Co., Inc. v Regent Int'l Corp.*,
    273 F Supp 2d 518 (S.D.N.Y. 2003) ......................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................13, 14

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ...............................................................................9

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...............................................................................6

*ATCi Commc'ns, Inc. v. Fed. Ins. Co.*,
    No. 16-23374-CIV, 2016 WL 8739604 (S.D. Fla. Oct. 27, 2016) ...........9

*Barnes v. Burger King Corp.*,
    932 F. Supp. 1441 (S.D. Fla. 1996) .....................................................15

*Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc.*,
    543 So. 2d 359 (Fla. 1st DCA 1989) ...................................................10

*Beaver v. Inkmart, LLC*,
    No. 12-60028, 2012 WL 3822264 (S.D. Fla. Sept. 4, 2012) ................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................13, 14

*Blinco v. Green Tree Servicing LLC*,
    400 F.3d 1308 (11th Cir. 2005) ...........................................................11

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...........................................................15

*Caley v. Gulfstream Aerospace Corp.*,
    428 F.3d 1359 (11th Cir. 2005) .............................................................7

*City of Miami v. JPMorgan Chase & Co.*,
    171 F. Supp. 3d 1309, 1314 (S.D. Fla. 2016) ......................................................................14

*Cluck-U Chicken, Inc. v. Cluck-U Corp.*,
    358 F. Supp. 3d 1295, 1310 (M.D. Fla. 2017) ....................................................................15

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
    332 F. App'x 565 (11th Cir. 2009) ....................................................................................17

*Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*,
    922 F. Supp. 1534 (S.D. Fla. 1996) .....................................................................................7

*Designers N. Carpet, Inc. v Mohawk Indus., Inc.*,
    153 F Supp 2d 193 (E.D.N.Y. 2001) ..................................................................................18

*Dickinson v. Exec. Bus. Grp.*,
    983 F. Supp. 1395 (M.D. Fla. 1997) ..................................................................................15

*Doctors Assocs., Inc. v. McCrory*,
    501 So. 2d 126 (Fla. 2d DCA 1987) ..................................................................................10

*Doe v. Princess Cruise Lined, Ltd.*,
    657 F.3d 1204 (11th Cir. 2011) .........................................................................................10

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
    961 F.2d 1052 (2d Cir.1992)..............................................................................................19

*Gorelik v. Dillon*,
    No. 10-20877-CIV, 2010 WL 11553317 (S.D. Fla. Dec. 15, 2010)....................................6, 11

*Gunson v. BMO Harris Bank, N.A.*,
    43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014) ......................................................................11

*Hall v. Burger King Corp.*,
    912 F.Supp. 1509 (S .D. Fla.1995) ....................................................................................17

*High v. Sawgrass Ford, Inc.*,
    No. CV 14-62883, 2015 WL 13595154 (S.D. Fla. Apr. 24, 2015) .........................................8

*Hoffman v. Finger Lakes Instrumentation, LLC*,
    7 Misc. 3d 179, 789 N.Y.S.2d 410 (Sup. Ct. 2005)............................................................11

*Interim Healthcare Inc. v. Health Care@Home, LLC*,
    No. 17-CV-61378, 2019 WL 1506707 (S.D. Fla. Mar. 20, 2019)........................................17

*Joseph v. Bersten*,
    612 F. App'x 551 (11th Cir. 2015) ................................................................................13, 14

*Kagan v. HMC-New York, Inc.*,
   939 N.Y.S.2d 384 (1st Dept 2012) ..........................................................................18

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017)..............................................................................................6

*Lady of Am. Franchise Corp. v. Arcese*,
   No. 05-61306-CIV, 2006 WL 8432331 (S.D. Fla. Feb. 13, 2006) ..........................16

*Langelier v. Seven Seas Cruises S. Dde R.L.*,
   No. 13-61632-CIV, 2014 WL 12603169 (S.D. Fla. Aug. 14, 2014) .........................6

*Libov v. Readix, Inc.*,
   No. 10-61755-CIV, 2011 WL 13216996 (S.D. Fla. Sept. 8, 2011)...................14, 15

*MasterCard Int'l Inc. v. Fed'n Internationale De Football Ass'n*,
   464 F. Supp. 2d 246 (S.D.N.Y. 2006), *vacated in part sub nom. MasterCard
   Int'l Inc. v. Fed'n Int'l de Football Ass'n*, 239 F. App'x 625 (2d Cir. 2007).........20

*In re Minpeco, USA, Inc. v. Swiss Bank Corp.*,
   237 B.R. 12 (S.D.N.Y. 1997)....................................................................................19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)....................................................................................................9

*MS Dealer Serv. Corp. v. Franklin*,
   177 F.3d 942 (11th Cir. 1999) ..................................................................................11

*Nat'l Westminster Bank, U.S.A. v Ross*,
   130 B.R. 656 (S.D.N.Y. 1991), *affd sub nom. Yaeger v Nat'l Westminster*, 962
   F.2d 1 (2d Cir 1992)....................................................................................18, 19, 20

*In re NationsRent Rental Fee Litig.*,
   No. 06-60924-CIV, 2009 WL 636188 (S.D. Fla. Feb. 24, 2009) ............................17

*Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*,
   No. 3:13-CV-576, 2014 WL 757942 (M.D. Fla. Feb. 26, 2014)................................8

*O'Hearn v. Bodyonics, Ltd.*,
   22 F. Supp. 2d 7 (E.D.N.Y. 1998) ...........................................................................18

*Olsher Metals Corp. v. Olsher*,
   No. 01-3212-CIV, 2003 WL 25600635 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F.
   App'x 383 (11th Cir. 2003) ...................................................................................6, 11

*Picard v. Credit Sols., Inc.*,
   564 F.3d 1249 (11th Cir. 2009) ..................................................................................6

*Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*,
   No. 06-22347-CIV, 2007 WL 601992 (S.D. Fla. Feb. 21, 2007) ...........................................11

*Robinson v. NBC Universal Cable*,
   No. 17-CV-81324, 2018 WL 8620154 (S.D. Fla. Apr. 23, 2018)
   (Middlebrooks, J.) ....................................................................................................................13

*RTM LLC v. Stakhovsky*,
   No. 10-21292-CIV, 2011 WL 13220493 (S.D. Fla. Feb. 3, 2011) .........................................17

*Ruby-Collins, Inc. v. City of Huntsville, Ala.*,
   748 F.2d 573 (11th Cir. 1984) ................................................................................................9

*Sanchez v. J.P. Morgan Chase Bank, N.A.*,
   No. 14-20468-CIV, 2014 WL 4063046 (S.D. Fla. Aug. 15, 2014) .........................................9

*Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*,
   432 F. Supp. 2d 1305 (S.D. Fla. 2006) .................................................................................12

*Shamsi v. Levin*,
   No. 17-80372-CIV, 2017 WL 7803807 (S.D. Fla. Oct. 27, 2017)
   (Middlebrooks, J.) ....................................................................................................7, 10, 11, 12

*Shea v. BBVA Compass Bancshares, Inc.*,
   No. 1:12-cv-23324, 2013 WL 869526 (S.D. Fla. Mar. 7, 2013) .............................................8

*SIG, Inc. v. AT & T Digital Life, Inc.*,
   971 F. Supp. 2d 1178 (S.D. Fla. 2013) ............................................................................15, 16

*Sims v. Clarendon Nat. Ins. Co.*,
   336 F. Supp. 2d 1311 (S.D. Fla. 2004) ...................................................................................6

*Solymar Invs., Ltd. v. Banco Santander S.A.*,
   672 F.3d 981 (11th Cir. 2012) ................................................................................................9

*Stanfield v. Suntrust Bank*,
   No. 815CV01472EAKTBM, 2016 WL 899279 (M.D. Fla. Mar. 2, 2016) ............................17

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
   10 F.3d 753 (11th Cir. 1993) ................................................................................................12

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
   432 F.3d 1327 (11th Cir. 2005) ...........................................................................................8, 9

*Travelodge Int'l, Inc. v. E. Inns, Inc.*,
   382 So.2d 789 (Fla. 1st DCA 1980) ....................................................................................16

*Yueh-Mei Kim Nutter, P.A. v. Schober*,
   No. 10-81090-CIV, 2011 WL 1474864 (S.D. Fla. Feb. 4, 2011) ...........................................10

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) .............................................................................................14

**Statutes**

9 U.S.C. § 2.....................................................................................................................................5

9 U.S.C. § 3...................................................................................................................................13

Fla. Stat. § 817.416 .........................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................2, 13, 14

Fed. R. Civ. P. 8.....................................................................................................................13, 15

Fed. R. Civ. P. 12(b)(6)................................................................................................................13

## I.      **INTRODUCTION**

Plaintiffs[1] entered into written agreements with Defendant Richemont North America, Inc. ("RNA"), RNA's ultimate parent company in Switzerland, and various dormant RNA subsidiaries that Plaintiffs have named as Defendants,[2] granting Plaintiffs permission to resell certain brands of luxury jewelry products and watches at several retail stores in Florida and Colorado.  Those written agreements contain broad mandatory arbitration provisions that the parties negotiated and are an essential element of their contractual business relationships.  By their own allegations, Plaintiffs' claims against Defendants arise from and are related to those agreements—which Plaintiffs expressly allege to be "material to this action."  (Compl. ¶ 78, ECF No. 1-1, at pp. 5-346).  Plaintiffs have even attached the agreements containing this mandatory arbitration language to their Complaint in a concession that the terms of those agreements govern this dispute.

Plaintiffs, however, have ignored the broad arbitration provisions in the very contracts they rely upon by choosing to file this action in court, rather than in an arbitration setting—presumably in an effort to secure some perceived tactical advantage.  But, as matter of well-settled law and consistent with the strong federal policy favoring the enforcement of arbitration agreements, the claims in this case must be arbitrated.  They should proceed, if at all, in arbitration in Switzerland and New York, as explicitly required by the agreements.  Specifically, under the contracts: (1) Plaintiffs Les Bijoux Group, LLC; Les Bijoux Aspen, LLC; and Les Bijoux Naples, LLC must arbitrate their claims in Switzerland; (2) Plaintiffs Les Bijoux, Inc. and Les Bijoux, LLC must (a) arbitrate their claims against Defendants A. Lange & Söhne and Jaeger-LeCoultre, Inc. in Switzerland and (b) must arbitrate their claims against Defendants RNA; Piaget, Inc.; Vacheron Constantin; and Roger Dubuis, Inc. in New York.  And to the extent the Court determines that any claim against any Defendant is not subject to mandatory arbitration by the express terms of an agreement, such claims must be arbitrated in Switzerland based on the doctrine of equitable estoppel.  The Court should stay this action pending the completion of arbitration proceedings.

---

[1]      Plaintiffs are:  Les Bijoux Group, LLC; Les Bijoux Naples, LLC; Les Bijoux Aspen, LLC; Les Bijoux, LLC, and Les Bijoux, Inc.

[2]      Defendants are: RNA; Van Cleef & Arpels, Inc.; VC&A Distribution, Inc.; A. Lange & Söhne, Inc.; Jaeger-LeCoultre, Inc; Officine Panerai, Inc.; Piaget, Inc.; Vacheron Constantin, Inc.; Roger Dubuis, Inc.; and Roger Dubuis North America, Inc.  Besides RNA, all Defendants are inactive, dormant entities.

In the alternative, if the Court concludes that arbitration is not appropriate as to some or all Defendants, it should dismiss Plaintiffs' claims under the Florida Franchise Act ("FFA") and for breach of the implied covenant of good faith and fair dealing for several reasons.

*First*, Plaintiffs' claims are based, at least in part, on alleged misrepresentations and omissions, yet they fail to allege with the particularity required under Fed. R. Civ. P. 9(b) any purported misrepresentations or omissions by any of the Defendants to any of the Plaintiffs during the sale or establishment of the alleged franchises.  Nor do they identify any details of such alleged misrepresentations or omissions, such as who made them, when, and where.  Instead, Plaintiffs engage in improper group pleading—which fails to satisfy basic pleading standards in the Eleventh Circuit, much less Rule 9(b).

*Second*, Plaintiffs' FFA claims are foreclosed as a matter of law by:  (a) the choice-of-law provisions in the parties' agreements, which provide that either Swiss or New York law govern the parties' relationships; and (b) the disclaimers made in the contracts stating no representations or warranties, or any misrepresentations, were made prior to entering into the agreements.

*Third*, under the laws governing the parties' agreements, it is well-established that a cause of action for breach of the implied covenant of good faith and fair dealing cannot be maintained in the absence of a claim that a term of the agreement has been breached.  Because Plaintiffs have not identified any breach of the terms of any of the Agreements, their good faith and fair dealing claim cannot as a matter of law survive.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Sell Defendants' Products at Several Retail Stores.

Defendants distribute luxury jewelry products and watches under the trade names Van Cleef & Arpels, A. Lange & Söhne, Jaeger-LeCoultre, Piaget, Vacheron Constantin, Officine Panerai, and Roger Dubuis.  (Compl. ¶ 47.)  Plaintiffs allege, albeit incorrectly, that RNA's products are distributed through wholly-owned subsidiaries of RNA, which Plaintiffs have also named separately as Defendants.  (*Id.* ¶ 14.)

Plaintiffs operate several retail stores where they distribute these products, pursuant to the "Boutique Agreements" and "Authorized Dealer Agreements" attached to Plaintiffs' Complaint. Although the Complaint inaccurately refers to the Boutique Agreements as "Franchise Agreements," each of these Boutique Agreements, as well as the Authorized Dealer Agreements, contains the following language:

(*See, e.g.*, Ex. 1, Brian M. Ercole Decl., at Ex. A, ¶ 37.9.)

According to the Complaint, Plaintiffs sell Defendants' products to consumers at retail boutiques in Naples, Florida (Compl. ¶¶ 19, 37), Palm Beach, Florida (*id.* ¶ 32), Boca Raton, Florida (*id*. ¶¶ 33, 60), and Aspen, Colorado (*id*. ¶¶ 20, 38).

**B.    The Relationships Between Plaintiffs and Defendants are Governed by Written Agreements.**

The Complaint lumps the five Plaintiff entities together and refers to them collectively as "LBJ."  (*Id*. at p. 1.)  Plaintiffs allege that "LBJ" entered into several agreements with Defendants authorizing "LBJ" to sell certain products of Defendants at Plaintiffs' stores.   Specifically, Plaintiffs allege that "LBJ" entered into contracts with:

1.    Defendants Van Cleef & Arpels and VC&A Distribution, Inc. to operate retail boutiques in Naples, Florida and Aspen, Colorado (*id.* ¶¶ 17-20);

2.    Defendant A. Lange & Söhne, Inc., formerly known as Lange Uhren GmbH, to operate retail boutiques in Palm Beach, Florida (*id.* ¶¶ 24-27, 32);

3.    Defendant Jaeger-LeCoultre, Inc. to operate retail boutiques in Palm Beach, Florida (*id.* ¶¶ 28-33);

4.    Defendant Officine Panerai, Inc. to operate retail boutiques in Naples, Florida and Aspen, Colorado (*id.* ¶¶ 34-38);

5.    Defendant Piaget, Inc. to be an authorized dealer of Piaget products (*id.* ¶ 40);

6.    Defendant Vacheron Constantin to be an authorized dealer of Vacheron Constantin products (*id.* ¶ 42); and

7.    Defendant Roger Dubuis, Inc. and Roger Dubuis North America, Inc. to be an authorized dealer of Roger Dubuis products (*id.* ¶¶ 43-46).

Plaintiffs allege that these agreements are the "Franchise Agreements" and "Authorized Dealer Agreements" on which Plaintiffs' claims are based, and they attach these agreements to the Complaint as "Composite Exhibit A."  (*Id.* ¶¶ 18, 25, 29, 35, 40, 42, 44, 46, 48.)   Plaintiffs' Complaint also makes reference to a Boca Raton boutique, and Plaintiffs attach to the Complaint Boutique Agreements and Authorized Dealer Agreements relating to the operation of a store in Boca Raton, Florida.   In addition to the Defendants, RNA's parent company, Richemont International SA, is party to several of the Agreements.  (*See* Exs. E, F, hereinafter, the "Richemont

International S.A. Agreements".)  A chart with the name, parties, and arbitration provision of each Agreement is attached hereto as Appendix A.[3]

   C.   **The Agreements Contain Mandatory Arbitration and Choice of Law Provisions.**

   There are two sets of agreements—the Authorized Dealer Agreements and the Boutique Agreements—that govern the parties' relationships.  As detailed in Appendix A, both sets of Agreements contain broad and mandatory arbitration provisions that are not limited to disputes arising under the contract itself.

   Of the four Authorized Dealer Agreements, two contain arbitration provisions that cover ███████████████████████████████████████████████████████████████████ ██████████████████████████████ (Ex. I, ¶ 17, Ex. J, ¶ 17, emphasis added.)  The arbitration provisions of the other two Authorized Dealer Agreements are similar inasmuch as they require arbitration of any disputes relating to or connected with the Agreement.  (Ex. G, ¶ 17 (███ ███████████████████████████████████████████ the Agreement, emphasis added); Ex. H, ¶ 7.3 (█████████████████████████████████████████████ ██████████ the Agreement, emphasis added).)   Each Authorized Dealer Agreement requires mandatory arbitration to take place in New York.  (Ex. G, ¶ 17, Ex. H, ¶ 7.3, Ex. I, ¶ 17, Ex. J, ¶ 17.)  New York law governs the relationships between the parties under Authorized Dealer Agreements.  (Ex. G, ¶ 12, Ex. H, ¶ 7.2, Ex. I, ¶ 12, at Ex. J, ¶ 12.)

   The Boutique Agreements, which pertain to Van Cleef & Arpels, A. Lange & Söhne, Jaeger-LeCoultre, and Panerai brands, cover ███████████ between the parties ██████████ the agreements:



---

[3]      The agreements attached to Plaintiffs' Complaint were redacted in state court and are re-filed here as Exhibits A-B, D-I to the Declaration of Brian M. Ercole ("Ercole Decl.").  In addition, Plaintiffs' omitted from the Lange Uhren GmbH Boutique Agreement the page containing the arbitration provision; the full agreement is attached as Exhibit C to the Ercole Decl.  And Plaintiffs failed to attach to the Complaint the Roger Dubuis Authorized Dealer Agreement, attached hereto as Exhibit J to the Ercole Decl. (together with agreements in Exhibits. A-I, the "Agreements").

(Ex. A, ¶ 38.1.)[4]   The Boutique Agreements require mandatory arbitration to take place in

████████████████[5]   The parties agreed in the Boutique Agreements that their relationships

with respect to each of the brands subject to those agreements—i.e., Van Cleef & Arpels, A. Lange

& Söhne, Jaeger-LeCoultre, and Panerai—are governed by Swiss law.[6]   (*Id.*)

### D.   Notwithstanding the Mandatory Arbitration Agreements, Plaintiffs Brought This Action In Court.

Notwithstanding the contractual provisions clearly requiring arbitration, Plaintiffs filed this

lawsuit on January 2, 2020 in state court.  (*See generally* Compl.)  The case was properly removed

to this Court on the basis of diversity jurisdiction, with Defendants expressly reserving their right

to seek to compel arbitration pursuant to the Agreements.  (Notice of Removal, ECF No. 1.)

In their Complaint, Plaintiffs make conclusory allegations that "Defendants" were required

under the Agreements to reimburse Plaintiffs in full for expenses incurred in constructing certain

boutique stores, but failed to do so (Compl., ¶ 52.); that they "stole" Plaintiffs' customers in

violation of the Agreements (*id.* ¶¶ 53, 55-56); that they refused to provide Plaintiffs with products

as required by the Agreements (*id.* ¶¶ 53, 58); that one of Plaintiffs' supposed "franchises" was

wrongfully terminated (*id.* ¶ 60); and that Defendants made intentional misrepresentations (*id.* ¶¶

71, 73, 75, 80).  Plaintiffs' Complaint does not allege facts specific to each Plaintiff and each

Defendant and they do not specify any misrepresentations by any of the Defendants that allegedly

induced them to enter into the Agreements.

Based on these conclusory allegations, Plaintiffs collectively bring two counts against

Defendants: (1) violation of the FFA, Fla. Stat. § 817.416 and (2) breach of the Implied Covenant

of Good Faith and Fair Dealing."  (*Id.* ¶¶ 62-82.)

## III.   ARGUMENT

### A.   Plaintiffs Should Be Compelled to Arbitrate Their Claims.

#### 1.   The FAA Controls This Dispute And Require Rigorous Enforcement of Arbitration Agreements.

The Federal Arbitration Act (the "FAA") provides that "an agreement in writing to submit

to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. §

---

[4]   Each Boutique Agreement contains a mandatory arbitration requirement with substantially similar language.  (Ex. B, ¶ 38.1, Ex. C, ¶ 37.1, Ex. D, ¶ 37.1, Ex. E, ¶ 37.1, Ex. F, 29.1.)

[5]   (Ex. A, ¶ 38.2, Ex. B, ¶ 38.2, Ex. C, ¶ 37.2, Ex. D, ¶ 37.2, Ex. E, ¶ 37.2, Ex. F, 29.1.)

[6]   (Ex. A, ¶ 39, Ex. B, ¶ 39, Ex. C, ¶ 38, Ex. D, ¶ 38, Ex. E, ¶ 38, Ex. F, 30.1.)

2.   Under the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-344 (2011); *Langelier v. Seven Seas Cruises S. Dde R.L.*, No. 13-61632-CIV, 2014 WL 12603169, at *2 (S.D. Fla. Aug. 14, 2014).   As the Eleventh Circuit has emphasized, "[t]he FAA creates a strong federal policy in favor of arbitration" and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (citations and quotations omitted).   Importantly, the Supreme Court held that the FAA's federal policy in favor of arbitration applies equally to contract formation *and* enforcement.   *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017).

The FAA applies to arbitration agreements in any contract evidencing a transaction involving interstate commerce.   *See, e.g., Picard*, 564 F.3d at 1252-53.   Here, Plaintiffs' claims clearly fall within the FAA's purview.   Plaintiffs are citizens of Florida and Colorado, and Defendants, as alleged, are citizens of Delaware and New York.   (Compl. ¶¶ 2-12.)   As part of their contractual arrangement, Plaintiffs allege that Defendants granted them the right to sell high-end jewelry products and watches manufactured outside of Florida and Colorado to retail customers in Florida and Colorado.   As a matter of law, the parties' contracts (between Florida and Colorado domiciled entities and non-Florida entities) involve interstate commerce.   *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004).

In addition, the FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").   *Gorelik v. Dillon*, No. 10-20877-CIV, 2010 WL 11553317, at *4 (S.D. Fla. Dec. 15, 2010) (citing 9 U.S.C. § 201).   The FAA's "adoption and implementation of the Convention requires the federal policy in favor of arbitration to apply 'with special force in the field of international commerce.'"   *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *2 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2003), *for text, see* No. 03-12184, 2004 WL 5394012 (11th Cir. Jan. 26, 2004) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631, (1985)).   Under the FAA, the Convention applies to an arbitration agreement involving an entity outside the United States if:

> (1) the agreement is in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is

> considered commercial; and (4) a party to the agreement is not an American citizen or the commercial relationship has some reasonable relation with one or more foreign states.

*Shamsi v. Levin*, No. 17-80372-CIV, 2017 WL 7803807, at *3 (S.D. Fla. Oct. 27, 2017) (Middlebrooks, J.) (quotations omitted).

The Agreements to which Richemont International S.A is party meet each of the four requirements for the Convention, and thus the FAA, to apply.  The Agreements are written and are commercial in nature.  The Richemont International S.A. Agreements require arbitration in Switzerland, a signatory to the Convention.  *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534, 1539 (S.D. Fla. 1996) ("Switzerland is a signatory to the Convention").   And Richemont International S.A is located in Switzerland and is not an American citizen.  As such, at a minimum, the Convention—and, in turn, the FAA's strong policy favoring arbitration—applies to the Richemont International S.A. Agreements.

> ## 2.  The Express Terms of the Agreements Compel Arbitration of Plaintiffs' Claims.
>
> ### a.  Plaintiffs Are Bound By The Express Terms of the Agreements.

Plaintiffs are bound by the express terms of the Agreements, including the mandatory arbitration clauses therein.  Indeed, as reflected in Appendix A, each Plaintiff entered into a written Agreement with a mandatory arbitration clause with a Defendant (other than Defendant Roger Dubuis, North America, Inc., which is not a legal entity).  (*See* App. A.)[7]  Plaintiffs' concede that they entered into the Agreements.  (Compl. ¶ 78 at pp. 5-346; *see also* Compl. ¶ 18 (referencing "fully executed Franchise Agreements"), ¶ 40 (referencing "fully executed Authorized Dealer Agreements").)   And they even allege that the Agreements are valid contracts.  (*Id.* ¶ 63.) Moreover, it is well-settled that signing a written Agreement with an arbitration clause signifies assent to that arbitration clause.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369

---

[7]      The entity ███████████ is party to several Agreements, purporting to be a ███████
████████████████████████████ (*See, e.g.*, Ex. 1, Ercole Decl., at Ex. G, p. 1, Ex. J, p. 1.)  However, as established in Defendants' Notice of Removal, Les Bijoux, Inc. is not a legal entity in Florida.  *See* Notice of Removal, ECF No. 1, at p. 7, n. 4.  Tellingly, the Agreements to which ███████████ is a party are executed by a ███████ (*see, e.g.*, Ex. 1, Ercole Decl., at Ex. G, p. 10, Ex. J, p. 9), indicating that the entity that is a party to the Agreement is "Les Bijoux, LLC."  As such, Les Bijoux, LLC is bound by the terms of the Agreements.  Alternatively, as explained in Section III.A.3., Les Bijoux, Inc. is equitably estopped from avoiding the mandatory arbitration provisions in the Agreements.

(11th Cir. 2005) (under the FAA, a written provision to arbitrate is enforceable); *High v. Sawgrass Ford, Inc.*, No. CV 14-62883, 2015 WL 13595154, at *1 (S.D. Fla. Apr. 24, 2015) (a person who signs an arbitration agreement "is bound by its terms and conditions"). As a result, Plaintiffs are bound by the mandatory arbitration clauses in those Agreements.[8]

> **b.** **Although It Is For The Arbitrator to Decide, There Can Be No Dispute That Plaintiffs' Claims Fall Within The Scope of the Arbitration Clauses.**

Whether Plaintiffs' claims fall within the scope of the broad arbitration clause is for the arbitrator to decide. Courts in the Eleventh Circuit consistently hold that when parties incorporate rules of arbitration which empower an arbitrator to decide issues of bilateral arbitrability, this incorporation serves as "clear and unmistakable evidence" of the parties' intent to delegate issues of bilateral arbitrability to an arbitrator. *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331-32 (11th Cir. 2005); *accord Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-CV-576, 2014 WL 757942, at *10 (M.D. Fla. Feb. 26, 2014); *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013).

Here, the Authorized Dealer Agreements contain arbitration provisions requiring arbitration to be governed by the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"),[9] and the Boutique Agreements require arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce ("Swiss Rules").[10] Under either set of rules, the ***arbitrator*** determines the arbitrability of the claims. The AAA Rules

---

[8]     Nor can Plaintiffs argue that certain Defendants cannot enforce the mandatory arbitration provisions of the Agreements because they are successors or predecessors to a party to an Agreement. As to Defendant A. Lange & Söhne, Inc., Plaintiffs attach to the Complaint an Agreement between Les Bijoux and A. Lange & Söhne, Inc.'s predecessor company, Lange Uhren GmbH. (Ex. 1, Ercole Decl., at Ex. C; *see also* Compl., ¶ 25 (defining A. Lange & Söhne, Inc. as "Lange" and stating, "Lange, formerly known as Lange Uhren Gmbh").) The Agreement provides that ██████████████████████████████████████████████ (Ex. 1, Ercole Decl., at Ex. C, ¶ 36.7.) As such, Les Bijoux is bound by the terms of the Agreement as to any claim it has against Defendant A. Lange & Söhne, Inc. Similarly, as to Defendant VC&A Distribution, Inc., Plaintiffs' attach an Agreement between Les Bijoux Group, LLC and Van Cleef & Arpels, which states that VC&A Distribution, Inc. is a predecessor to Van Cleef & Arpels. (Ex. 1, Ercole Decl., at Ex. A, ¶ 37.4.) The Agreement further provides that it supersedes a prior agreement between Les Bijoux Group, LLC and VC&A Distribution, Inc. (*Id.*) As such, Les Bijoux, Group, LLC is bound by the terms of the Agreement as to any claim it has against VC&A Distribution, Inc.

[9]     (*See* Ex. G, ¶ 17, at Ex. H ¶ 7.3, at Ex. I, ¶ 17, at Ex. J., ¶ 17.)

[10]    (Ex. A, ¶ 38.1, Ex. B, ¶ 38.1, Ex. C, ¶ 37.1, Ex. D, ¶ 37.1, Ex. E, ¶ 37.1, Ex. F, ¶ 29.1.)

provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[11]   Similarly, the Swiss Rules provide that the "arbitral tribunal shall have the power to rule on any objections to its jurisdiction, including any objection with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement."[12]  Therefore, under *Terminix* and controlling Eleventh Circuit law, whether Plaintiffs' claims fall within the scope of the arbitration clause must be submitted to arbitration.

Nonetheless, even if this Court were to conclude it must decide whether the claims fall within the scope of the arbitration clauses, Plaintiffs' claims clearly fall within that broad scope. In determining whether an agreement to arbitrate applies to a given dispute, any doubts must be resolved in favor of arbitrability.  *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (same); *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984) (same).  "So long as [the] dispute touch[es] on a matter covered by the arbitration clause, it must be arbitrated."  *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-CIV, 2014 WL 4063046, at *4 (S.D. Fla. Aug. 15, 2014) (alteration in original and citations and quotations omitted).  Indeed, "[t]he presumption of arbitrability under the FAA is 'particularly applicable' where the arbitration provision in question is very broad, and this presumption may only be overcome by 'the most forceful evidence.'" *ATCi Commc'ns, Inc. v. Fed. Ins. Co.*, No. 16-23374-CIV, 2016 WL 8739604, at *4 (S.D. Fla. Oct. 27, 2016) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

The language contained in the arbitration agreements here is broad.  For example, the Authorized Dealer Agreements between Les Bijoux and RNA, Vacheron Constantin Division and between Les Bijoux and RNA, Roger Dubuis Division require submitting to arbitration ████

████████████████████████████████████████████████████████████████████████

---

[11]      AAA Consumer Rules, R-7, available at:
https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (last visited Feb. 9, 2020), attached hereto as Exhibit K to the Ercole Decl.

[12]      SCAI Arbitration Rules, Art. 21, available at:
https://www.swissarbitration.org/files/837/Swiss%20Rules%202019/Web%20versions%202019/
Arbitration%20Web%202019/Arbitration/SwissRules2012_English_2019.pdf (last visited Feb. 9, 2020), attached hereto as Exhibit L to the Ercole Decl.

███████████████████████████ (App. A, emphasis added.)  The arbitration provisions in the other Agreements, including the Richemont International S.A. Agreements, similarly require submitting to arbitration ████████ between the parties ████████ ████ the agreement.  (App. A, emphasis added.)  This Court has recognized the breadth of arbitration provisions that cover disputes "related to" an agreement, stating that "they do not require that 'the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties,' as does the more restrictive phrase 'arising out of.'"  *Shamsi*, 2017 WL 7803806, at \*7 (S.D. Fla. Aug. 24, 2017) (citing *Doe v. Princess Cruise Lined, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011)).

Moreover, applying these principles, courts have held that claims for breach of the implied covenant of good faith and fair dealing and statutory causes of action, such as the FFA, fall within the scope of mandatory arbitration provisions that require the arbitration of all disputes "arising out of" or "in relation to" the agreement.  *See, e.g.*, *Yueh-Mei Kim Nutter, P.A. v. Schober*, No. 10-81090-CIV, 2011 WL 1474864, at \*2 (S.D. Fla. Feb. 4, 2011) (implied covenant of good faith and fair dealing claim falls within arbitration clause as "arising under this Agreement" because it "cannot be maintained 'absent an allegation that an express term of the contract has been breached.'"); *Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc.*, 543 So. 2d 359, 362 (Fla. 1st DCA 1989) (compelling arbitration of Florida Franchise Act claim based on arbitration provisions' "relating to" language); *Doctors Assocs., Inc. v. McCrory*, 501 So. 2d 126, 127 (Fla. 2d DCA 1987) (compelling arbitration of FFA claim).

The claims asserted in Plaintiffs' Complaint fall squarely within the arbitration provisions in the Agreements.  The Agreements form the entire basis for the parties' commercial relationships.  And as alleged by Plaintiffs, the claims relate directly to the parties' obligations under—and the alleged violations of—those Agreements.  (*See* Compl. ¶¶ 18, 21-23, 25-26, 29-30, 35-36, 40, 42, 44, 46, 48-49, 52-53, 55-56, 58 (alleged obligations and violations); *see also id.* ¶¶ 62-66, 68-70, 72-74 (Florida Franchise Act claim based on alleged violations of the Agreements); *id.* ¶¶ 78, 81 (breach of implied covenant of good faith and fair dealing claim based citing to the Agreements).  Consistent with the federal policy in favor of arbitration, Plaintiffs' claims must be arbitrated.

> **3.      To The Extent The Court Finds That Any Parties Are Not Signatories, The Doctrine of Equitable Estoppel Requires Arbitration.**

Insofar as the Court finds that any Plaintiff or Defendant is not bound by the express terms

of an Agreement, Plaintiffs should be equitably estopped from attempting to avoid the mandatory arbitration provisions in the Agreements.  This Court and the Eleventh Circuit recognize two separate and independent circumstances giving rise to equitable estoppel: (1) "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement"; and (2) "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Shamsi*, 2017 WL 7803807, at *4 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) ("a non-signatory . . . may . . . be held to the arbitration clause . . . under the doctrine of equitable estoppel[,which] . . . precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes").[13]  Each standard is met here.

First, Plaintiffs' claims rely upon the written Agreements, including the Richemont International S.A. Agreements to which the Convention applies.[14]  The Complaint lumps all Plaintiffs together as "LBJ" and asserts that "LBJ" entered into agreements with each Defendant. (Compl. ¶¶ 18, 25, 29, 35, 40, 42, 44, 46, 48.)  Plaintiffs not only "reference" and "presume the existence" of written agreements, but the "common allegations" section of the Complaint is littered

---

[13]     With respect to contracts to which the Convention applies, this Court and others have applied federal substantive law to determine the enforceability of an arbitration agreement. *See, e.g.*, *Shamsi*, 2017 WL 7803807, at *4 (applying federal law and noting that "the Eleventh Circuit has not decided whether federal substantive law or state law determines the enforceability of an arbitration agreement by a non-signatory under the Convention"); *Gorelik*, 2010 WL 11553317, at *4; *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, No. 06-22347-CIV, 2007 WL 601992, at *6 (S.D. Fla. Feb. 21, 2007) (despite choice-of-law clause selecting foreign law for interpretation of contract, the "question of whether [the] dispute should be subject to arbitration shall be governed by federal law"); *Olsher Metals Corp.*, 2003 WL 25600635, at *5 ("interpretation of an arbitration clause is a matter of federal law").

[14]     The Court should apply federal law to equitably estop any Plaintiff from avoiding the mandatory arbitration provision in the Richemont International SA Agreements as to any claim that is not subject to the express terms of a separate agreement containing a mandatory arbitration clause.  Alternatively, the Court would reach the same result applying state-law equitable estoppel principles to prevent Plaintiffs from avoiding the mandatory arbitration provisions in any contracts to which the Convention does not apply. *See Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014) (Florida law allows a non-signatory to enforce arbitration provisions against signatory under the same two circumstances as does federal law); *Hoffman v. Finger Lakes Instrumentation, LLC*, 7 Misc. 3d 179, 185, 789 N.Y.S.2d 410, 415 (Sup. Ct. 2005) (same as to New York law).

with allegations of the parties' supposed rights and obligations under the so-called Franchise Agreements and Authorized Dealer Agreements and conclusory allegations that "Defendants" circumvented the Agreements' requirements.  (*Id.* ¶¶ 18, 21-23, 25-26, 29-30, 35-36, 40, 42, 44, 46, 48-49, 52-53, 55-56, 58).  Both counts incorporate the "common allegations."  (*Id*. ¶¶ 62, 76.)

There is more.  Ten of the fourteen paragraphs in Count I (Violation of the FFA) reference the Agreements.  (*Id.* ¶¶ 63-66, 68-70, 72-74.)[15]  And in Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), Plaintiffs allege that "the Franchise Agreements[] are material to this action."  (*Id.* ¶ 78.)  As a result, both of Plaintiffs' "claims arise out of and relate directly to the written agreement[s], and arbitration is appropriate."  *Shamsi*, 2017 WL 7803807, at *5; *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) (holding appellant equitably estopped from avoiding arbitration of its claims because "each claim . . . makes reference to" and "presumes the existence of" the agreement with an arbitration provision).

Second, Plaintiffs allege "interdependent and concerted misconduct" by all Defendants. *Shamsi*, 2017 WL 7803807, at *5.  Plaintiffs allege, albeit erroneously, that the Defendants (other than RNA) are "division[s]" of RNA that sell luxury goods using separate brand names.  (Compl. ¶¶ 14, 47.)  The Complaint lumps RNA and its "division[s]" together as "Defendants," claiming that they collectively contravened the Agreements.  (*See, e.g.*, *id*. ¶ 53.)   Indeed, the Complaint lacks a single allegation of wrongdoing or violation of an Agreement against any Defendant *individually*.  Where, as here, allegations "blend wrongdoing by . . . the signatory, with misconduct by . . . non-signatory Defendants . . . the Eleventh Circuit allows for extension of the Arbitration Clause to the non-signatory Defendants."  *Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*, 432 F. Supp. 2d 1305, 1315 (S.D. Fla. 2006); *see also Shamsi*, 2017 WL 7803807, at *5 (applying rule).  The Court should follow this rule.  Even if the Court finds that one or more Defendants is a non-signatory to an Agreement, the claims against those Defendants must be arbitrated, too.

---

[15]    The remaining four allegations in Count I relate to the Agreements without explicitly referencing the Agreements.  (*See id.* ¶ 62 (incorporating the allegations in the preceding paragraphs of the Complaint), ¶ 67 (referencing the "supply of goods" pursuant to the Agreements), ¶ 71 (paraphrasing the FFA), ¶ 75 (alleging damages relating to supposed misrepresentations in negotiations leading up to the entering of the Agreements).

4.      **Plaintiffs' Case Should be Stayed Pending Resolution of Arbitration
in Switzerland and New York**.

Because Plaintiffs must arbitrate their claims, the Court should compel arbitration and stay

the case pending completion of arbitration.  *See* 9 U.S.C. § 3 (requiring a court, upon motion by a

party to the agreement, to stay proceedings pending the resolution of arbitration); *Robinson v. NBC

Universal Cable*, No. 17-CV-81324, 2018 WL 8620154, at *4 (S.D. Fla. Apr. 23, 2018)

(Middlebrooks, J.) (applying rule).

As set forth in the Agreements, Plaintiffs must litigate certain claims in Switzerland and

others in New York.  Specifically, Les Bijoux Group, LLC; Les Bijoux Aspen, LLC; and Les

Bijoux Naples, LLC must arbitrate their claims in Switzerland.  (Ex. A, ¶ 38.2, Ex. B, ¶ 38.2, Ex.

E, ¶ 37.2.)  Les Bijoux, Inc. and Les Bijoux, LLC must arbitrate their claims against A. Lange &

Söhne and Jaeger-LeCoultre, Inc. in Switzerland (Ex. C, ¶ 37.2, Ex. D, ¶ 37.2) and must arbitrate

their claims against RNA; Piaget, Inc.; Vacheron Constantin; and Roger Dubuis, Inc. in New York

(Ex. G, ¶ 17, Ex. I, ¶ 17, Ex. J, ¶ 17).  To the extent Plaintiffs assert claims against Roger Dubuis,

North America, Inc., those must be arbitrated in Switzerland based on equitable estoppel pursuant

to the Richemont International S.A. Agreements.

B.      **In the Alternative, All Claims Must Be Dismissed Under Rule 12(b)(6)**.

If the Court holds that arbitration against some or all of the Defendant is not appropriate,

dismissal of Plaintiffs' claims on the merits is still required.  Under Rule 12(b)(6), the Court must

dismiss the action if the Plaintiffs "fail to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  To survive dismissal, the allegations against each Defendant must transcend the

"speculative," "conceivable," and "possible," and must "state a claim to relief that is plausible on

its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556–57, 566–67, 570 (2007).  In making

this determination, the Court must disregard "legal conclusions" and "conclusory statements," and

must scrutinize the well-pled factual allegations to ensure that they are more than "'merely

consistent with' a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Am.

Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).   The Eleventh Circuit has

made it abundantly clear that when the complaint "indiscriminately groups the defendants together,

it fails to comply with the minimum standard of Rule 8." *Joseph v. Bersten*, 612 F. App'x 551,

555 (11th Cir. 2015).

In addition, Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The purpose

of this particularity requirement is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation omitted). Here, applying these principles, each of Plaintiffs' claims should be dismissed.

### 1.   Plaintiffs Fail To Plead Their Claims With Particularity And Engage in Improper Group Pleading.

As an initial matter, both the FFA and the breach of covenant of good faith and fair dealing claims should be dismissed because Plaintiffs fail to plead their claims with the requisite particularity and engage in improper group pleading.

Each of Plaintiffs' claims is based on alleged fraudulent misrepresentations. (*See* Compl. ¶¶ 3-14 (describing "fraudulent treatment" or "fraudulent conduct"), ¶ 73 ("Defendants knowingly and intentionally misrepresented," and "Defendants' fraudulent actions"), ¶ 75 (describing "misrepresentations . . . made by Defendants"), ¶ 80 (same)). Accordingly, each claim is subject to the "heightened pleading requirement of Rule 9(b) [which] is designed to notify each defendant of the misconduct he or she is accused of committing." *Libov v. Readix, Inc.*, No. 10-61755-CIV, 2011 WL 13216996, at *1 (S.D. Fla. Sept. 8, 2011). "Thus, a plaintiff may not lump multiple defendants together because this constitutes impermissible 'group pleading.'" *Id*. To meet these requirements, Plaintiffs must set forth in their Complaint:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id*. (citation and quotation omitted). Plaintiffs' Complaint makes no such allegations.

According to the Complaint's allegations, which must be taken as true for purposes of a Rule 12 motion, Defendants are ten separate companies that are incorporated in different states and sell various different brands of jewelry and watches. (Compl. ¶¶ 3-12.) Yet, Plaintiffs improperly lump all ten entities under the term "Defendants," (*see id.* ¶¶ 53-61, 72-75, 80), and fail to identify which defendant, if any, made the alleged misrepresentations that form the basis of Plaintiffs' claims. This fails to meet basic pleading requirements under *Iqbal* and *Twombly*, *see Joseph*, 612 F. App'x at 555, much less the particularity requirement that each Plaintiff plead facts as to what specifically was said, to whom, when, and why it was false. *See, e.g., City of Miami v.*

*JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1314 (S.D. Fla. 2016) (applying rule and holding that "[t][he City's failure to allege facts as to each of these Chase-related Defendants violates Rule 8 and *Twombly/Iqbal,* requiring dismissal of the City's FHA claim without prejudice"); *Libov*, 2011 WL 13216996 at *1 (dismissing all claims because "rather than differentiating between the individual Defendants in setting forth who made the alleged misrepresentations," plaintiffs engaged in "impermissible group pleading [that] lump[ed] all Defendants together"). Accordingly, Plaintiffs' claims should be dismissed. *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1187, 1193 (S.D. Fla. 2013) (dismissing FFA claim where plaintiff only referenced "Defendants" and "failed to identify any intentional misrepresentations made by any of the individual . . . Defendants."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (dismissing claims where "Plaintiffs have simply 'lumped together' all of the Defendants in their allegations . . . .").

2.      **Plaintiffs' FFA Claims Fail As A Matter of Law.**

a.      *The Choice of Law Provisions in the Agreements Doom Plaintiffs' FFA Claim.*

Plaintiffs' FFA claim also should be dismissed because the express terms of the parties' contracts state that either New York or Swiss law applies to this action and, thus, Plaintiffs are incapable of asserting a cause of action under the FFA.  The Agreements on which Plaintiffs' claims are based all provide that foreign law, and ***not*** the law of Florida, shall apply and govern the contractual terms.  "Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable." *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1310 (M.D. Fla. 2017) ("Florida's franchise statutes are inapplicable . . . based on the parties' intent that Maryland law govern their franchise agreement . . . .").  Because the agreements all state that either New York or Swiss law governs, all claims brought under Florida statutes are inapplicable here.  *See Dickinson v. Exec. Bus. Grp.*, 983 F. Supp. 1395, 1397 (M.D. Fla. 1997) (holding that parties' choice of law provision in franchise agreement rendered franchisee's home state franchise act inapplicable); *Barnes v. Burger King Corp.*, 932 F. Supp. 1441, 1442-43 (S.D. Fla. 1996) (same).  The FFA claim should be dismissed.

b.      *The Express Disclaimers in the Agreements Foreclose Plaintiffs From Alleging Detrimental Reliance Under The FFA.*

Plaintiffs cannot properly allege detrimental reliance, as is required to state a claim under the FFA, because each of the agreements contains disclaimers acknowledging Defendants have

15

made no representations or warranties regarding profits or the potential success of the business venture.   In order to state a claim under the FFA, a franchisee must demonstrate "proof of intentional words or conduct by the franchisor, concerning the prospects or chances of success of the enterprise, which were relied upon by the franchisee to his detriment, and which are not in accordance with the facts."  *Travelodge Int'l, Inc. v. E. Inns, Inc.*, 382 So.2d 789, 791 (Fla. 1st DCA 1980).  Plaintiffs do not specify in their Complaint what alleged misrepresentations were made, by whom, when, where, nor how they relied on them to their detriment.  That alone dooms their FFA claim, as they cannot allege facts to support the detrimental reliance required under the statute.  *See SIG, Inc.*, 971 F. Supp. 2d at 1187.

In addition, where a contract between the parties "expressly disclaims any representations received regarding profits and successes[,] . . . states the risk associated with entering into the franchise[, and contains] . . . a complete disclaimer," Florida courts routinely dismiss FFA causes of action, finding the plaintiff could not have detrimentally relied on any statements by the defendant.  *Lady of Am. Franchise Corp. v. Arcese*, No. 05-61306-CIV, 2006 WL 8432331, at *6 (S.D. Fla. Feb. 13, 2006).  Here, virtually all the parties' Agreements contain such disclaimers:



████████████████████████████

(Ex. A, ¶¶ 4.1-4.2; *see also* Exs. B, C, D, E, ¶¶ 4.1-4.2; Ex. F, at 2; Exs. G, I, J, ¶ 13.)

Therefore, "Plaintiffs cannot satisfy the detrimental reliance requirement, as the . . . Agreement contained a detailed disclaimer and explanation regarding the risk associated with any business enterprise . . . ." *Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 3822264, at *6 (S.D. Fla. Sept. 4, 2012) (dismissing FFA claim with prejudice).  Since they cannot show any detrimental reliance, Plaintiffs' FFA claim fails and should be dismissed.  *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (holding plaintiff could not establish the requisite detrimental reliance because "Cold Stone's franchise agreement included a detailed disclaimer and explanation regarding the risks of owning and operating a franchise and encouraged franchisees to conduct an independent investigation of their prospects for success"); *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1529 (S.D. Fla. 1995) (ruling that plaintiffs could not have justifiably relied on the alleged misrepresentations because of an unambiguous provision disclaiming all prior representations regarding the profits and/or sale volume that the franchisee might be expected to realize); *Interim Healthcare Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 1506707, at *13 (S.D. Fla. Mar. 20, 2019) (plaintiff's "[Florida Franchise Act] claim fails because the [agreement] contains a detailed disclaimer and encouraged [plaintiff] to perform its own due diligence and independent investigation.").

### 3.    Plaintiffs' Breach of Implied Covenant of Good Faith And Fair Dealing Claims Fail Under Applicable Law.

Because the choice-of-law provisions in each of the contracts at issue state that either New York or Swiss law applies, Plaintiffs' implied covenant of good faith and fair dealing claims are governed by the laws of those foreign jurisdictions.  *See In re NationsRent Rental Fee Litig.*, No. 06-60924-CIV, 2009 WL 636188, at *3 (S.D. Fla. Feb. 24, 2009) (choice of law provision applies to breach of covenant of good faith and fair dealing claim); *see also Stanfield v. Suntrust Bank*, No. 815CV01472EAKTBM, 2016 WL 899279, at *4 (M.D. Fla. Mar. 2, 2016) (granting motion to dismiss implied covenant of good faith and fair dealing claims because the parties' contract invoked Georgia, not Florida, choice of law); *RTM LLC v. Stakhovsky*, No. 10-21292-CIV, 2011 WL 13220493, at *1 (S.D. Fla. Feb. 3, 2011) (dismissing on other grounds and finding Swiss law applied to implied covenant of good faith and fair dealing claim based on choice of law in contract).

### a. Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claims Fail Under New York Law.

Plaintiffs' covenant of good faith and fair dealing claims fail under New York law because Plaintiffs do not claim that any terms of the contract were breached.  "A claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action that is separate and different from a breach of contract claim." *Designers N. Carpet, Inc. v Mohawk Indus., Inc.*, 153 F Supp 2d 193, 197 (E.D.N.Y. 2001) (citing *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 11 (E.D.N.Y. 1998)). "Rather, breach of that duty is merely a breach of the underlying contract." *Id.* To state a cognizable claim for implied covenant of good faith and fair dealing, "a plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kagan v. HMC-New York, Inc.*, 939 N.Y.S.2d 384, 392 (1st Dept 2012) (citation omitted).  Indeed, the parties' contractual rights and liability cannot be "varied, nor their terms eviscerated, by a claim that one party has exercised a contractual right but has failed to do so in good faith." *Nat'l Westminster Bank, U.S.A. v Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991), *affd sub nom. Yaeger v Nat'l Westminster*, 962 F.2d 1 (2d Cir 1992).

Here, Plaintiffs fail to allege what terms of the contracts, whether express or implied, were breached by the alleged acts of each Defendant.  Plaintiffs do not even identify specific conduct by each Defendant, much less link that conduct to any particular provision in any particular Agreement that has been breached.  For this reason alone, Plaintiffs' breach of implied covenant claims under New York law should be dismissed.

In fact, the Agreements themselves negate Plaintiffs' very assertions.  For example, Plaintiffs make allegations that Defendants "agreed to pay" for certain construction or remodeling expenditures for boutiques and "failed and refused" to do so.  (Compl. ¶¶ 19-20; *see also id*. ¶¶ 22, 23, 32, 37, 38, 52, 73, 80.)  However, these allegations fail to state a claim for breach of covenant of good faith and fair dealing.  The contracts governing the parties' relationship expressly states that Plaintiffs' agree to be solely responsible for all costs associated with any construction or remodeling of the stores that would become boutiques.  For example, the Van Cleef and Arpels Boutique Agreement states:





(Ex. A, ¶ 6.2; *see also* Exs. B, C, D, E, ¶ 6.2; Ex. F, ¶ 8.2; Ex. H, ¶ 3.3.)

Thus, based on the express terms of the Agreements, Defendants were not required to "reimburse or contribute to LBJ's Boutique build-out costs and high-end Boutique opening party," among other costs.  (Compl. ¶ 80.)  Under New York law, "the contract as written governs the relationship of the parties and . . . courts are not at liberty to impose obligations under the guise of the implied covenant which are inconsistent with the terms of the contract from which the covenant is to be implied." *In re Minpeco, USA, Inc. v. Swiss Bank Corp.*, 237 B.R. 12, 26 (S.D.N.Y. 1997); *see also Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992); *Nat'l Westminster Bank, U.S.A.*, 130 B.R. at 679 ("covenant of good faith . . . cannot frustrate the operation of an express term of an agreement bargained for at arms length").  Of course, a party that acts in accordance with rights expressly provided in a contract cannot be liable for breaching an implied covenant of good faith.  *Id.*  Accordingly, Plaintiffs' claims regarding "build-out costs" and operating expenses fail to state a claim for breach of covenant of good faith and fair dealing.

Likewise, Plaintiffs make certain allegations that the "customers' desired Product was more readily and quickly available . . . through Defendants' own corporate Boutiques," that Defendants were "filling the special order for LBJ's VIP customer from Defendants' corporate boutiques," and that Defendants did not make the same stock available to all boutiques.  (Compl. ¶ 53.)  Plaintiffs also allege that, simply because Defendants fulfilled orders at their own corporate stores, (*id.* ¶¶ 54-55), Defendants were "stealing or "diverting" away customers from Plaintiffs (*id.* ¶ 80).  But nowhere in their Complaint do Plaintiffs allege what express or implied terms Defendants breached simply by stocking their own product or fulfilling orders from customers.  Nor do any of the agreements state that Defendants must provide all the same products to every boutique, whether corporate or not.  "New York law is clear that the implied covenant cannot be

used to create independent obligations beyond the contract." *ARI & Co., Inc. v Regent Int'l Corp.*, 273 F Supp 3d 518, 523 (S.D.N.Y. 2003) (dismissing breach of covenant of good faith claim). Because Plaintiffs fail to make any allegations of conduct inconsistent with the terms of their agreements, all claims for breach of good faith and fair dealing fail under New York law. *Nat'l Westminster Bank, U.S.A.*, 130 B.R. at 679 (recognizing and applying principle).

>    **b.**    **Plaintiffs' Implied Covenant of Good Faith and Fair Dealing**
>             **Claims Fail Under Swiss Law.**

Plaintiffs' implied covenant of good faith and fair dealing claim also fails under Swiss law because a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action that is separate and distinct from a breach of contract claim. Instead, the general principle of good faith and fair dealing between parties found in Article 2 of the Swiss Civil Code is "used by Swiss courts to interpret contracts and to imply terms where necessary." *MasterCard Int'l Inc. v. Fed'n Internationale De Football Ass'n*, 464 F. Supp. 2d 246, 305 (S.D.N.Y. 2006), *vacated in part sub nom. MasterCard Int'l Inc. v. Fed'n Int'l de Football Ass'n*, 239 F. App'x 625 (2d Cir. 2007).[16] Thus, the Swiss principle of good faith and fair dealing allows for the interpretation, completion, or correction of contractual provisions, and this occurs when those provisions are incomplete, unclear, or vague. *Id*. at 306 ("if a term is missing in a contract, the court must supply the term using the standard of reasonable parties acting under good faith.")

Here, Plaintiffs do not allege that certain contractual provisions were incomplete, unclear, or vague and, thus, warrant use of good faith and fair dealing principles to interpret those terms. And because the good faith and fair dealing is not a cause of action in and of itself but, rather, a principle used by Swiss courts to interpret contractual gaps or ambiguities, Plaintiffs fail to state a claim under Swiss law and their claims should be dismissed.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court should either (a) stay this litigation pending the outcome of arbitration in Switzerland and New York, or (b) dismiss Plaintiffs' claims with prejudice.

---

[16]    *See also* Article 2 of the Swiss Civil Code at https://www.admin.ch/opc/en/classified-compilation/19070042/202001010000/210.pdf.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

Counsel for Defendants has conferred with Plaintiffs' counsel about the relief requested in

this Motion in accordance with Local Rule 7.1(a)(3), and Plaintiffs oppose the relief requested.

Dated: February 18, 2020                              Respectfully submitted,

<u>*/s/ Brian M. Ercole*</u>
Brian M. Ercole, FL Bar No. 102189
brian.ercole@morganlewis.com
Matthew M. Papkin, FL Bar No. 106565
matthew.papkin@morganlewis.com
Valerie M. Toth, FL Bar No. 123705
valerie.toth@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Ste. 5300
Miami, FL 33131-2339
Telephone: (305) 415-3000

R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP
1702 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
brendan.fee@morganlewis.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of February 2020, I electronically filed the foregoing Motion with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/Brian M. Ercole*
Brian M. Ercole